UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CAROLINE SKINNER,
DWAYNE PRESSLEY and
MELISSA ATHANASIADIS,

      Plaintiff,                        Case No: 4:15-cv-00197-RH-CAS

v.

RENEGADE BARBER SHOP, INC.,
and TINA MCDANIELS PEACOCK,
individually,

      Defendant.
_____/

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT AND COUNTERCLAIM

    COME NOW, the Defendants, Renegade Barber Shop, Inc. and Tina M. Peacock, in her individual capacity, by and through undersigned counsel and hereby respond to the Complaint as follows:

    1.    Admit action. Deny liability because Defendants do not employ Plaintiffs.

    2.    Admit action. Deny liability or that Plaintiffs are employees for jurisdictional purposes.

    3.    Denied.

    4.    Denied.

    5.    Without knowledge and therefore denied.

    6.    Without knowledge and therefore denied.

    7.    Admit first and second sentences. Remaining allegations are denied.

8. First sentence is denied. As to the remaining allegations, the Renegade Barber Shop, Incorporated is a corporation established under the laws of the State of Florida. A primary owner is Ms. Tina Peacock. The remaining allegations are denied because they are unclear as both Defendants are separate legal persons.

## FACTUAL BACKGROUND

9. Denied.

10. Denied.

11. There are no exhibits attached to the Complaint. The website reflects the best evidence of its contents. The website indicates all barbers are self-employed.

12. Admit rent and fees are collected from each service, which is industry standard to rent a booth. Sales taxes are deducted on the rent paid by the booth renters to lease/rent the booth and deposited with the State of Florida. A fee is also collected for the cost of transactions for credit cards and other services as agreed by booth renters. Remaining allegations are denied. Booth renters keep their own records, or should keep their own records, of services both in cash and through credit card. Plaintiff's earnings are collected by them.

13. Plaintiffs are self-employed independent contractors. Denied liability since Plaintiff's are independent contractors.

14. Denied.

15. Denied.

16. Denied.

17. Unknown and therefore denied.

18. Denied.

375923

## COUNT I – VIOLATION OF 26 U.S.C. § 7434

19. Defendants reallege and incorporate by reference responses to paragraphs 1-18 above.

20. Denied.

21. Admit citation but deny liability.

22. Denied.

Defendant denies that Plaintiff is entitled to any of the relief requested under the WHEREFORE clause (a) through and including (c) of Plaintiff's Complaint in this Count.

## COUNT II - CONVERSION

23. Defendants' responses to paragraphs 1 - 18 above are realleged and incorporated herein by reference.

24. Denied.

25. Denied.

Defendant denies that Plaintiff is entitled to any of the relief requested under the WHEREFORE clause (a) of Plaintiffs' Complaint for this Count.

## COUNT III – UNFAIR & DECEPTIVE PRACTICES

26. Defendants' responses to paragraphs 1 - 18 above are realleged and incorporated herein by reference.

27. Admit action deny liability.

28. Denied.

29. Denied.

375923

Defendant denies that Plaintiff is entitled to any of the relief requested under the WHEREFORE clause (a) of Plaintiffs' Complaint for this Count.

### COUNT IV – DECLARATORY RELIEF

30. Defendants reallege and incorporate by reference the responses to paragraphs 1-18 above.

31. Admit action, deny liability.

32. Denied.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Denied.

Defendant denies that Plaintiff is entitled to any of the relief requested under the WHEREFORE clause of Plaintiffs' Complaint for this Count.

### COUNT V – FAIR LABOR STANDARDS ACT

38. Plaintiffs appear to have inadvertently skipped Paragraph No. 38 and thus there is no allegation for Defendants to admit or deny.

39. Defendants reallege and incorporate by reference the responses to paragraphs 1-18 above.

40. Denied. Plaintiffs are independent contractors.

41. Denied.

42. Denied.

375923

## COUNT VI - FLORIDA MINIMUM WAGE ACT

43. Defendant reallege and incorporate by reference his responses to paragraphs 1-18 above.

44. Denied.

45. Denied.

46. Denied.

## COUNT VII - NEGLIGENCE

47. Defendants reallege and incorporate by reference the responses to paragraphs 1-18 above.

48. Denied.

49. Denied.

## COUNT VIII - FRAUD

50. Defendants reallege and incorporate by reference his responses to paragraphs 1-18 above.

51. Denied.

52[mis-numbered as 41].   Denied.

## PRAYER FOR RELIEF

Defendants deny that Plaintiffs are entitled to any of the relief requested under the WHEREFORE clause (a) through and including (f) of Plaintiffs' Complaint.

## DEMAND FOR TRIAL BY JURY

Defendants admit that Plaintiffs are demanding a trial by jury. Defendants deny that Plaintiff's claims have any merit or that Plaintiffs are entitled to any relief.

375923

## Affirmative Defenses

1. Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

2. Plaintiffs' claims are barred by the applicable statute of limitations.

3. Plaintiffs' claim for declaratory relief should be dismissed for failure to state a claim upon which relief can be granted in that there is no justiciable controversy between the Parties.

4. Plaintiffs are not entitled to relief under 26 U.S.C. § 7434 as Plaintiffs cannot demonstrate either Defendant knowingly filed a fraudulent return.

5. Plaintiffs are not entitled to relief under 26 U.S.C. § 7434 as Defendants are not the "filer" of the information return contemplated by the statute.

6. Any violation of the FLSA or FMWA by Defendants was not willful and was wholly unintentional.

7. Plaintiffs are not entitled to any recovery for the damages asserted as all monies due and owing to Plaintiffs were paid by Defendant.

8. Plaintiffs performed services for Defendants as an independent contractor and not an employee. Accordingly, the provisions of the FLSA and FMWA upon which Plaintiffs' Complaint is based, does not apply to them.

9. Plaintiffs are not entitled to any recovery for the damages asserted against Defendant Tina Peacock, individually, because Plaintiffs were never employed by Peacock.

10. Plaintiffs' claims are barred to the extent that they worked overtime without Defendants' actual or constructive knowledge, i.e., Defendants did not suffer or permit that work.

375923

11. If it be proven that Defendants did not comply with the FLSA, which Defendants deny, Plaintiffs' claim is barred to the extent that they seek compensation for activities preliminary or postliminary to their principle activities or that were not compensable working time within the meaning of the FLSA.

12. If it be proven that Defendants did not comply with the FLSA, which Defendants deny, the *de minimis* rule applies to any alleged violation, that is, to the extent Plaintiffs were not paid for all time worked, some or all of it was *de minimis*.

13. Plaintiffs' claims may be barred by the defense/doctrine of estoppel to the extent that they intentionally submitted incorrect information to Defendants as to the hours they now claim to have worked.

14. If it be proven that Defendants did not comply with the FLSA, which Defendants deny, they are entitled to set-off against any Plaintiffs recovery (a) any amounts paid to them for hours they did not work and (b) for all moneys loaned to Plaintiff but not yet paid back.

15. If it be proven that Defendants did not comply with the FLSA which Defendants deny, Defendants at all times acted in good faith with a reasonable belief that it was not violating the FLSA and without any intent to deprive Plaintiffs of any FLSA rights and, thus, even if it be proven that they are entitled to recover, Plaintiffs is not entitled to liquidated damages.

16. If it be proven that Defendants did not comply with the FLSA which Defendants deny, Defendants did not know that its conduct violated the FLSA and did not show reckless disregard for whether its conduct was violative, and thus their actions were not "willful" so as to invoke the three year statute of limitations.

17. Plaintiffs have failed to mitigate their damages.

375923

18.     Even assuming that Plaintiffs worked additional time, Plaintiffs' weekly wages were sufficient to satisfy the Federal Minimum Wage and FMWA for all hours worked.

19.     Plaintiffs' claims for liquidated damages are subject to the applicable limitations on such damages as set forth in 29 U.S.C. § 216.

20.     Plaintiffs are not entitled to any recovery for the damages asserted as all monies due and owing to Plaintiffs was paid by Defendants.

21.     Plaintiffs failed to exhaust their administrative remedies and conditions precedent to their claims, including, but limited to, failing to provide presuit notice required by Chapter 448 Florida Statutes.

22.     Assuming *arguendo* Plaintiffs were employees and not independent contractors, they may be exempt from the overtime provisions of the Fair Labor Standards Act by operation of 29 U.S.C. Section 213.

23.     Assuming *arguendo* Plaintiffs were employees rather than independent contractors, some or all of Plaintiffs' claims are barred by the limitation provisions of the Fair Labor Standards Act, 29 U.S.C. Section 255.

24.     Notwithstanding the possibility that individuals may be held liable under the FSLA, courts continue to recognize that individual business owners are shielded from personal liability by the corporate shield.

25.     The individual defendant was not the employer of Plaintiffs under the FLSA which requires that "employer" include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Under the economic reality test, the Plaintiffs cannot pierce the corporate veil.

375923

26. The complaint's claims for overtime compensation and liquidated damages are barred, in whole or part, by the applicable statute of limitations, prescribed by 29 U.S.C. §255, inasmuch as the alleged violations are not willful and are outside of the statute of limitations.

27. Tina Peacock cannot be held individually liable for the causes of action raised in Plaintiff's Complaint.

28. Defendants did not owe a duty of care to Plaintiffs alleged as in the complaint, did not breach any duty of care, lack causation, and the Plaintiff's did not and cannot allege actual damages to state a claim for negligence.

29. To the extent fraud is alleged, the Plaintiffs sales taxes paid on their lease agreements were deposited with the State of Florida, no fraud was committed nor specifically plead to state a claim. All fees for credit cards, other services or to rent booths was known at all times, should have been known, and was made for legitimate purposes.

30. Plaintiffs' claim of fraud and negligence fail because Plaintiffs have not suffered any damages.

31. Plaintiff's lack standing to assert a violation of the Unfair and Deceptive Trade Practices Act because, but limited to, the fact that they are not consumers or otherwise have standing to assert violations of this law.

32. Defendant has not converted monies from Plaintiffs. Rather, all monies are collected for legitimate business purposes known, or constructively known, by the Plaintiffs.

33. Defendants currently have insufficient information available upon which to form a belief as to whether they have additional affirmative defenses available. Defendants reserve the right to assert additional affirmative defenses in the event discovery indicates that they would be appropriate.

375923

## COUNTERCLAIM

Defendants/Counter-Plaintiffs, RENEGADE BARBER SHOP, INC., and TINA MCDANIELS PEACOCK, individually, sue Plaintiffs/Counter-Defendants, DWAYNE PRESSLEY and MELISSA ATHANASIADIS, and state as follows:

### THE PARTIES

1.  Renegade Barber Shop, Inc., is a duly incorporated Florida for-profit company engaged in the business of providing barber services, operating within Leon County, Florida.

2.  Tina Peacock is the owner of Renegade Barber Shop, Inc.

3.  Skinner, Pressley, and Athanasiadis are all independent contractors who provided barber services to Renegade under a written Barber/Stylist Rental Agreement.

### JURISDICTION AND VENUE

4.  This Court has supplemental jurisdiction over this Counterclaim under 28 U.S.C. § 1367(a) because the claims asserted in the Counterclaim are so related to the claims asserted in the Complaint filed by Skinner, Pressley, and Athanasiadis that they form part of the same case and controversy under Article III of the U.S. Constitution.

5.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a).

### FACTS

6.  On March 7, 2015, Skinner, Pressley, and Athanasiadis filed a Complaint (Doc. 1) ("the Complaint") against Renegade and Ms. Peacock, individually, seeking damages associated with claims of alleged violations of 26 U.S.C. § 7434, conversion, the Florida Deceptive and Unfair Trade Practices Act, the Fair Labor Standards Act, and the Florida Minimum Wage Act. Skinner, Pressley, and Athanasiadis also asserted claims of conversion, negligence, and fraud.

7.  Skinner, Pressley, and Athanasiadis also each separately entered into Independent

375923

Contractor Agreements with Renegade on or about June 9, 2007 (Athanasiadis) and August 22, 2011 (Pressley). A true and correct copy of the agreement signed by Athanasiadis is attached as Exhibit A. A true and correct copy of the agreement signed by Pressley is attached as Exhibit B.

8. Both Agreements provide, in relevant part, that Athanasiadis and Pressley acknowledge their status as non-employees of Renegade and expressly agree to:

> Pay and hold Establishment Owner harmless, for all tax liabilities to any Federal, State, or municipal or other administrative entity assessing such taxes, which shall include, but not necessarily limited to income taxes, self employment taxes, unemployment taxes, and worker's compensation;
>
> Assume[] all responsibility and covenants to hold Establishment Owner harmless from all liability for damage or injury to Associate, Associate's business (or any loss of income herefrom), merchandise or other property of the Associate, Associate's employer, clients and customers or any other person in or about the establishment premises;
>
> Pay Establishment Owner, upon demand, any costs or expenses incurred by Establishment Owner, in connection with any breach or default of Associate under this agreement, whether or not suit is commenced. In the event any action for breach is commenced hereunder, the party in whose favor a judgment is entered shall pay to the prevailing part a reasonable sum as to the attorney's fees and costs herein.

(Exs. A and B, ¶¶ 4(I), 8, 12).

9. The claims asserted by Athanasiadis and Pressley fall within the terms of the Agreement, including the indemnification provisions in the aforementioned sections.

10. Accordingly, if the Court finds the Agreements to be enforceable and that Athanasiadis and Pressley were properly treated as independent contractors, Renegade and Peacock are entitled to judgment enforcing the indemnification clauses of the Agreement, including an award of all costs and expenses, including reasonable attorney's fees, incurred by Renegade and Peacock in defending against the Complaint.

375923

WHEREFORE, Renegade and Peacock respectfully requests (a) its costs and expenses, including reasonable attorneys fees, incurred in defending against the Complaint if the Court ultimately finds the Agreement to be enforceable and that Pressley and Athanasiadis were properly classified as independent contractors; (b) pre-judgment and post-judgment interest; and (c) all necessary and proper relief.

Respectfully submitted this 15th day of May, 2015.

/s/ Jason E. Vail
JASON E. VAIL
Florida Bar No. 0014043
jvail@anblaw.com
**ALLEN, NORTON & BLUE, P.A.**
906 North Monroe Street, Suite 100
Tallahassee, Florida 32303
(850) 561-3503
(850) 561-0332 (Facsimile)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF filing system which will automatically send a copy to: Marie Mattox and James Garrity, MARIE A. MATTOX, PA, 310 East Bradford Road, Tallahassee, FL 32303-4804, this 15th day of May, 2015.

/s/
Attorney

375923

## BARBER/STYLIST BOOTH RENTAL AGREEMENT

This Agreement is made by Garry and/or Tina Peacock (Renegade Barber Shop), residents of Gadsden County, Florida, subsequently called "Establishment Owner" and _____ (herein referred to as Associate), who resides at __3539 Apalachee Parkway__, City of __Tallahassee__, State of __Fl__.

A. Establishment Owner owns the hair care business known as Renegade Barber Shop, located at _____, and functions to provide hair care to the general public through the rental of stations operated by *Associates*.

B. *Associate* is duly licensed by the Florida Barbers Board or Florida Board of Cosmetology to perform hair care services to the public pursuant to license # _____. *Associate* represents and warrants the license is current and in good standing, and *Associate* shall, during the term of this agreement, maintain the license in good standing or be found in default.

C. *Associate* is licensed by the State of Florida and holds an occupational license for the City of Tallahassee (license #_____) and Leon County (license #_____). *Associate* represents and warrants the license is current and in good standing, and *Associate* shall, during the term of this agreement, maintain the license in good standing or be found in default.

D. *Associate* desires to rent a station from the Establishment Owner, and perform the following Services to the general public _____.

E. *Associate* desires to sale hair care products and holds a Sales Tax Certificate Number and Annual Resale Certificate (#_____). *Associate* represents and warrants the license is current and in good standing, and *Associate* shall, during the term of this agreement, maintain the license in good standing or be found in default.

F. *Associate* agrees to rent a station of approximately 100 Sq. Ft. and *Associate* shall pay daily the sum of __ _____% of the total number of hair cuts performed per day plus $1.00 for each hair cut performed per day for the use of the credit card machine and for the use of the station area (a minimum of $300 per month), in accordance with the terms of this agreement.

In consideration of the mutual promises set forth herein,

### IT IS MUTUALLY AGREED AS FOLLOWS:

1. **TERM:** This agreement shall be for the term of twelve months, commencing _____. Should *Associate* hold over in possession of the premises after expiration of the term of this agreement, or any renewal or extension of the term of this agreement, such holding over shall be deemed to be a yearly renewal. Establishment Owner has the option to cancel agreement at any time due to *Associate*'S default in any covenant or agreement to be performed by it under this agreement. The rental rate shall remain fixed during the term of this agreement.

2. **RENTAL PAYMENT:** *Associate* shall pay to the Establishment Owner the daily rent for the designated station at the end of each business day.

3. **ESTABLISHMENT OWNER DUTIES:**

    A. Establishment Owner agrees to provide the *Associate* a station area including a chair, cabinet within the station area, supply of neck strips or equivalent and shaving cream.

EXHIBIT A

1

B. Establishment Owner shall pay all utilities used and one "shop" phone at the premises. *Associate* may at his or her own discretion and expense have their own phone.

C. Establishment Owner shall pay liability insurance on the building as required by the building owner. It does NOT include insurance of any kind for the *Associate*.

4. ***Associate* DUTIES:**

   A. *Associate* shall, <u>at his or her own cost</u>, maintain public liability, errors and omissions and product liability insurance.

   B. *Associate* shall keep the station area clean, serviceable and attractive AT ALL TIMES. *Associate* shall keep the restroom and common area clean AT ALL TIMES. *Associate* shall pay for all damage to the chair, cabinet and the premises caused by the *Associate* or *Associate*'S clients, <u>when it exceeds ordinary wear and tear</u>.

   C. *Associate* shall have open and unlimited access to the business 24 hours a day, seven days a week during the term of this agreement. *Associate* shall have a set of keys to the business premises.

   D. *Associate* shall be responsible to maintain his or her own time schedule for performing services and agrees to have his or her station open at a minimum the follow times:

   | Monday    | _____ |
   | Tuesday   | _____ |
   | Wednesday | _____ |
   | Thursday  | _____ |
   | Friday    | _____ |
   | Saturday  | _____ |

   *Associate* agrees that the rented station shall be open at all times listed above whether by the *Associate* or another person as mentioned in paragraph 5. *Associate* shall be considered in default when station area is closed during a posted open and operating time.

   E. *Associate* shall be responsible for advertising.

   F. *Associate* shall be responsible to provide and maintain all tools, equipment and supplies necessary to perform his or her hair care services to the public.

   G. *Associate* shall perform good hair cuts and hair care services for the public. *Associates* with excessive complaints from customers to Establishment Owner and other BOOTH RENTERS / *Associates* will be found in default of this agreement.

   H. Hair care service rates were determined by a majority rule of past and present *Associates*. These prices are listed in each shop location only as a guide. *Associate* may at their own discretion provide hair care services at different rates.

   I. *Associate* shall pay and hold Establishment Owner harmless, for all tax liabilities to any Federal, State, or municipal or other administrative entity assessing such taxes, which shall include, but not necessarily be limited to; income taxes, self employment taxes, unemployment taxes, and worker's compensation.

   J. *Associate* is responsible for his or her own record keeping.

2

5. **ASSIGNMENT AND SUBLETTING:** *Associate* shall have the right to assign or sublet the station area to any other *Associate* at Renegade Barber Shop. *Associate* shall continue to be liable under terms and conditions of the Agreement in the event of any assignment.

6. **ESTABLISHMENT OWNER'S OPTION TO RELOCATE:** Establishment Owner reserves the right to move *Associate*'S station at any time during the agreement period within the business premises, however, Establishment Owner shall maintain and provide the *Associate* the approximate square footage in the booth area, as set forth in this agreement.

7. **RELATIONSHIP OF PARTIES:** Establishment Owner is interested only in providing space for *Associate* to conduct his or her hair care services to the general public, and the conduct and control of all services performed will lie solely with the *Associate*. *Associate* **is not** considered an agent or employee of the Establishment Owner for any purpose, and **is NOT** entitled to any benefits that may arise out of an employer/employee relationship.

8. **LIABILITY:** *Associate* assumes **all** responsibility and covenants to hold Establishment Owner harmless from all liability for damage or injury to *Associate*, *Associate*'S business (or any loss of income herefrom), merchandise or other property of the *Associate*, *Associate*'S employer, clients and customers or any other person in or about the establishment premises.

9. **DEFAULT:** The occurrence of any one or more of the following shall constitute a material default and breach the Agreement by the *Associate*:

    A. Failure by the *Associate* to make any payment of rent or any other payment required to be made by *Associate* hereunder.

    B. Failure by the *Associate* to have station open and operational at all times as stated in the Agreement.

    C. Failure by the *Associate* to maintain all license in good standing at all times necessary to run his/her business as stated in the Agreement.

    D. Failure to give good hair cuts and excessive complaints from customers to Establishment Owner and other *Associates*.

10. **REMEDIES:** On the occurrence of any default of *Associate*, Establishment Owner may, at any time thereafter, with or without notice of demand and without limiting Establishment Owner in the exercise of any right or remedy provided by law:

    A. Terminate this Agreement in which case *Associate* shall immediately surrender possession of the station area to Establishment Owner. If *Associate* fails to surrender such station area, Establishment Owner may take possession of the station area and all supplies, materials and tools of the *Associate* located in the business premises. In such events, Establishment Owner shall be entitled to recover from the *Associate* all damages incurred by the Establishment Owner by reason of *Associate's* default.

    B. Pursue any other remedy available to Establishment owner under the laws of the state of Florida.

11. **TERMINATION:** Either party may terminate this agreement by providing to the other party written or verbal notice. *Associate* shall give Establishment Owner all keys to the premises, as well as pay any sums due Establishment Owner under the terms of this agreement.

12. **LEGAL COST:** *Associate* shall pay Establishment Owner, upon demand, any costs or expenses incurred by Establishment Owner, in connection with any breach or default of *Associate* under this agreement, whether or not suit is commenced. In the event any action for breach is commenced hereunder, the party in whose favor a judgment is entered shall pay to the prevailing party a reasonable sum as to the attorney's fees and costs herein.

13. **OPTIONS TO RENEW:** Should *Associate* hold over in possession of the premises after expiration of the term of this agreement, or any renewal or extension of the term of this agreement, such holding over shall be deemed to be a yearly renewal. Establishment Owner has the option to cancel agreement at any time due to *Associate's* default in any covenant or agreement to be performed by it under this agreement. The rental rate shall remain fixed during the term of this agreement.

14. **MISCELLANEOUS PROVISIONS:**

    A. The captions of the paragraphs of the agreement are to assist in reading the agreement and are not part of the terms herein.

    B. This is the only agreement between the parties, and there are and were no verbal representations, warranties, understandings, agreements or promises pertaining to this agreement mad by either party, except as set forth herein. All amendments to this agreement shall be in writing and signed by the parties.

    C. All notices required or permitted under this agreement to be given to the *Associate*, shall be in writing and personally delivered or sent by mail to the address set forth above, and all notices required o be given to the Establishment Owner shall be personally delivered or sent by mail to 320 Turkey Run, Havana, FL 32333. Either party may change its notice of address upon written notice to the other party.

    D. The rights and obligations of the parties hereunder shall be determined pursuant to the laws of the state of Florida.

    E. This agreement shall be binding upon the parties, heirs, personal representatives and assigns.

IN WITNESS WHEREOF, the parties have executed this agreement on

__6/9/07_____(Date).

ESTABLISHMENT OWNER

BY _Ine Carol_

ASSOCIATE

BY _Melissa Athanasiadis_    Telephone #: _850 264 3491_

WITNESS

BY_____

4

## BARBER/STYLIST RENTAL AGREEMENT

This Agreement is made by Garry and/or Tina Peacock (Renegade Barber Shop), residents of Gadsden County, Florida, subsequently called "Establishment Owner" and __Dwayne Hessley__ (herein referred to as Associate), who resides at __2855 Sun Hwy__, City of __Tallahassee__, State of __Florida__.

A. Establishment Owner owns the hair care business known as Renegade Barber Shop, located at _____, and functions to provide hair care to the general public through the rental of stations operated by Associates.

B. Associate is duly licensed by the Florida Barbers Board or Florida Board of Cosmetology to perform hair care services to the public pursuant to license # __CL0227188__. Associate represents and warrants the license is current and in good standing, and Associate shall, during the term of this agreement, maintain the license in good standing or be found in default.

C. Associate is licensed by the State of Florida and holds an occupational license for the City of Tallahassee (license # __CL 022718S__) and Leon County (license # _____). Associate represents and warrants the license is current and in good standing, and Associate shall, during the term of this agreement, maintain the license in good standing or be found in default.

D. Associate desires to rent a station from the Establishment Owner, and perform the following Services to the general public _____

E. Associate agrees to rent a station of approximately 100 Sq. Ft. and Associate shall pay daily the sum of __30__ % of the total number of haircuts performed per day plus $1.00 for each hair cut performed per day for the use of the credit card machine and for the use of the station area (a minimum of $300 per month), in accordance with the terms of this agreement.

In consideration of the mutual promises set forth herein,
**IT IS MUTUALLY AGREED AS FOLLOWS:**

1. **TERM:** This agreement shall be for the term of twelve months, commencing __8/22/11__. Should Associate hold over in possession of the premises after expiration of the term of this agreement, or any renewal or extension of the term of this agreement, such holding over shall be deemed to be a yearly renewal. Establishment Owner has the option to cancel agreement at any time due to Associate's default in any covenant or agreement to be performed by it under this agreement. The rental rate shall remain fixed during the term of this agreement.

2. **RENTAL PAYMENT:** Associate shall pay to the Establishment Owner the daily rent for the designated station at the end of each business day.

3. **ESTABLISHMENT OWNER DUTIES:**

   A. Establishment Owner agrees to provide the Associate a station area including a chair, cabinet within the station area, supply of neck strips or equivalent and shaving cream.

   B. Establishment Owner shall pay all utilities used and one "shop" phone at the premises. Associate may at his or her own discretion and expense have their own phone.

   C. Establishment Owner shall pay liability insurance on the building as required by the building owner. It does NOT include insurance of any kind for the Associate. Associate is responsible for his/her own insurance.

1

EXHIBIT B

4. **Associate DUTIES:**

   A. *Associate* shall, at his or her own cost, maintain public liability, errors and omissions and product liability insurance.

   B. *Associate* shall keep the station area clean, serviceable and attractive **AT ALL TIMES**. *Associate* shall keep the restroom and common area clean AT ALL TIMES. *Associate* shall pay for all damage to the chair, cabinet and the premises caused by the *Associate* or *Associate*'s clients, <u>when it exceeds ordinary wear and tear</u>.

   C. *Associate* shall have open and unlimited access to the business 24 hours a day, seven days a week during the term of this agreement. *Associate* shall have a set of keys to the business premises.

   D. *Associate* shall be responsible to maintain his or her own time schedule for performing services and agrees to have his or her station open at a minimum the follow times:

   | Day | Hours |
   |---|---|
   | Monday | 9-5 |
   | Tuesday | 9-5 |
   | Wednesday | 9-5 |
   | Thursday | 9-5 |
   | Friday | 9-5 |
   | Saturday | 9-4 |
   | Sunday | |

   *Associate* agrees that the rented station shall be open at all times listed above whether by the *Associate* or another person as mentioned in paragraph 5. *Associate* shall be considered in default when station area is closed during a posted open and operating time.

   E. *Associate* shall be responsible for his/her own advertising.

   F. *Associate* shall be responsible to provide and maintain all tools, equipment and supplies necessary to perform his or her hair care services to the public.

   G. *Associate* shall perform good haircuts and hair care services for the public. *Associates* with excessive complaints from customers to Establishment Owner and other *Associates* will be found in default of this agreement.

   H. Hair care service rates were determined by a majority rule of past and present *Associates*. These prices are listed in each shop location only as a guide. *Associate* may at their own discretion provide hair care services at different rates.

   I. *Associate* shall pay and hold Establishment Owner harmless, for all tax liabilities to any Federal, State, or municipal or other administrative entity assessing such taxes, which shall include, but not necessarily be limited to; income taxes, self employment taxes, unemployment taxes, and worker's compensation.

   J. *Associate* is responsible for his or her own record keeping.

5. **ASSIGNMENT AND SUBLETTING:** *Associate* shall have the right to assign or sublet the station area to any other *Associate* at Renegade Barber Shop. *Associate* shall continue to be liable under terms and conditions of the Agreement in the event of any assignment.

6. **ESTABLISHMENT OWNER'S OPTION TO RELOCATE:** Establishment Owner reserves the right to move *Associate*'s station at any time during the agreement period within the business premises, however, Establishment Owner shall maintain and provide the *Associate* the approximate square footage in the booth area, as set forth in this agreement.

7. **RELATIONSHIP OF PARTIES:**   Establishment Owner is interested only in providing space for *Associate* to conduct his or her hair care services to the general public, and the conduct and control of all services performed will lie solely with the *Associate*. *Associate* **is not** considered an agent or employee of the Establishment Owner for any purpose, and **is NOT** entitled to any benefits that may arise out of an employer/employee relationship.

8. **LIABILITY:** *Associate* assumes **all** responsibility and covenants to hold Establishment Owner harmless from all liability for damage or injury to *Associate*, *Associate*'S business (or any loss of income herefrom), merchandise or other property of the *Associate*, *Associate*'s employer, clients and customers or any other person in or about the establishment premises.

9. **DEFAULT:** The occurrence of any one or more of the following shall constitute a material default and breach the Agreement by the *Associate*:

   A. Failure by the *Associate* to make any payment of rent or any other payment required to be made by *Associate* hereunder.

   B. Failure by the *Associate* to have station open and operational at all times as stated in the Agreement.

   C. Failure by the *Associate* to maintain all license in good standing at all times necessary to run his/her business as stated in the Agreement.

   D. Failure to give good haircuts and/or receive excessive complaints from customers to Establishment Owner and other *Associates*.

   E. Failure to maintain a positive attitude and good/safe work environment.

10. **REMEDIES:** On the occurrence of any default of *Associate*, Establishment Owner may, at any time thereafter, with or without notice of demand and without limiting Establishment Owner in the exercise of any right or remedy provided by law:

    A. Terminate this Agreement in which case *Associate* shall immediately surrender possession of the station area to Establishment Owner. If *Associate* fails to surrender such station area, Establishment Owner may take possession of the station area and all supplies, materials and tools of the *Associate* located in the business premises. In such events, Establishment Owner shall be entitled to recover from the *Associate* all damages incurred by the Establishment Owner by reason of *Associate's* default.

    B. Pursue any other remedy available to Establishment owner under the laws of the State of Florida.

11. **TERMINATION:** Either party may terminate this agreement by providing to the other party written or verbal notice. *Associate* shall give Establishment Owner all keys to the premises, as well as pay any sums due Establishment Owner under the terms of this agreement.

12. **LEGAL COST:** *Associate* shall pay Establishment Owner, upon demand, any costs or expenses incurred by Establishment Owner, in connection with any breach or default of *Associate* under this agreement, whether or not suit is commenced. In the event any action for breach is commenced hereunder, the party in whose favor a judgment is entered shall pay to the prevailing party a reasonable sum as to the attorney's fees and costs herein.

3

13. **OPTIONS TO RENEW:** Should *Associate* hold over in possession of the premises after expiration of the term of this agreement, or any renewal or extension of the term of this agreement, such holding over shall be deemed to be a yearly renewal. Establishment Owner has the option to cancel agreement at any time due to *Associate's* default in any covenant or agreement to be performed by it under this agreement. The rental rate shall remain fixed during the term of this agreement.

14. **MISCELLANEOUS PROVISIONS:**

    A. This is the only agreement between the parties, and there are and were no verbal representations, warranties, understandings, agreements or promises pertaining to this agreement made by either party, except as set forth herein. All amendments to this agreement shall be in writing and signed by the parties.

IN WITNESS WHEREOF, the parties have executed this agreement on __8/22/11_____(Date).

ESTABLISHMENT OWNER
BY _[signature]_

ASSOCIATE
BY _[signature]_

Telephone #: _(850) 321-4676_
Email Address: _prettyboy-d@hotmail.com_
Address: _____
_____
_____

Drivers License #: _____